Good morning, Your Honors. May it please the Court. Marisol Orihuela, on behalf of Alex Marquez-Fuentes, I'd like to reserve three minutes for rebuttal. Mr. Marquez-Fuentes was kidnapped, beaten, for days held without water or food, leading him to reenter this country illegally. I'm sentencing the District Court Erd in refusing to believe that Mr. Marquez-Fuentes was kidnapped and that this was the reason why he reentered the country. The District Court also procedurally Erd in discrediting Mr. Marquez-Fuentes when he described his domestic violence conviction. The brief also raises a claim of substantive reasonability, but I'd like to focus my argument on the first two claims. Starting with the kidnapping, Mr. Marquez-Fuentes made consistent statements both in his letter to the court, in the PSR, and during his allocution, and corroborated this claim with evidence of a police report about a kidnapping. In addition, the evidence that he had hired or attempted to hire Immigration Counsel turned out that the so-called Immigration Counsel was not barred. And coupled with corroboration of danger in Honduras, including the brutal murders of four of his family members, two of which were murdered the same year that he was kidnapped, the record is nothing but consistent with his belief, with his kidnapping and his belief that he would be killed in Honduras if he stayed there, which is why he reentered the country illegally. Nevertheless, the district court discredited his kidnapping, did not believe it, and did not believe his argument that that's why he reentered this country. And that is a clear error of fact, Your Honors, that requires remanding for resentencing. Now, the government had the opportunity and attempted to point out to the district court why the claim of asylum and the claim of fear and the claim of kidnapping were made up. However, all those were actual mistakes. The government pointed out what it believed to be errors in the dates of the police report. That is, it believed that the police report was made in August of 2010, but claimed to describe a kidnapping that occurred in the future, which would be factually impossible. But the record shows that, in fact, the dates were the opposite. The kidnapping occurs in August of 2010, just a matter of months after Mr. Marquez Fuentes was deported from this country, and that the report was made just a few months later in October 2010 by his cousin. The government also points out a mistake, a so-called inaccuracy or inconsistency in the second police report, which detailed the brutal murders of Mr. Marquez Fuentes' cousins, and also that was a mistake made by the government. This is all to say there is nothing in the record for the district court to have concluded that the kidnapping did not occur, and that's why it's a clear error that warrants resentencing. Are we reviewing for plain error here? Yes, Your Honor, we are reviewing for plain error. But we do think that we have met each of the burdens. We think the error of the district court disbelieving Mr. Marquez Fuentes lacks any support in the record. There is nothing but consistent evidence of the kidnapping and of his bona fide belief that he would be killed in Honduras should he be returned. What evidence was there in the record that did not come from him? The evidence that did not come from him are the two police reports that were submitted by his counsel. There's a letter that comes from his fiancée as well, who had known him for a few years. And there is the – and then there's the evidence about the immigration counsel being retained, so there's receipts in what appears to be a contract. All those are consistent with a bona fide belief that he was scared to go back to Honduras. Nevertheless, without any support in the record, the court disbelieves him, and that's where we believe the error occurred. I think the error is clearly plain because of the prior longstanding law in the Ninth Circuit about the – about due process requiring that a person be sentenced based on accurate information. That's Cardi. That's 2008. Clearly predates the sentencing in this case. And of course, as far as substantial rights and the likelihood of affecting the fairness of proceedings, that is easily met in this case, where that is the main mitigation argument that Mr. Marquez-Fuentes is presenting at sentencing. And disbelieving that someone was kidnapped and made up a kidnapping story and made up a reason to reenter the country when the offense here is entering the country would clearly could have affected the – may have affected the sentence by a month or more, which is all that's required under this – under this Court's law. If I may turn to the second issue, Your Honor, I think another proper basis – Your Honor, I think another proper basis for resentencing is what there's no dispute over, that there was a clear error. And that's the district court believing that Mr. Marquez-Fuentes was convicted by a jury beyond a reasonable doubt. Kennedy, what difference does it make whether he was convicted if he admitted it? The reason it makes a difference is because he did not even admit the facts that make up a conviction for domestic violence. What he did in the – in the State proceedings is that he pled to the offense through nolo contendere. There was a – that – what that means is basically he did not – he was not required to admit all of the facts. And therefore, when he then at – at sentencing, in his allocution, and then also in the letter that he submits with his counsel's position paper, protests the underlying facts, he's not lying to the Court. He's saying, I – because he could have – he could have protested the facts and still pled nolo contendere. Now, if he had actually been convicted beyond a reasonable doubt by a jury of his peers, then the Court would validly be discrediting what he's saying to – at sentencing about protesting to the facts. That is, he would have gone through a process. Evidence would have been submitted to a jury. Twelve individuals would have had to unanimously agree that the government had proved up each and all of the elements of the domestic violence conviction, whereas all that happened in the State proceeding is a stipulation of not even – a stipulation by the parties that does not require Mr. Marquez-Huentez to admit the facts that make up the elements, and – and he obtained the conviction that way. Is it your client's position that he, in fact, did not commit the domestic violence? The – the letter – so the – the letter in the allocution seems – seems to suggest that, yes, Your Honor. So couldn't a sentencing court say, here's a guy who still doesn't admit what he did was wrong, never admits what he does is wrong, I'm going to sentence him to even more than the low end if he's going to keep not admitting the crimes he's committed in the past? The court – the – if the – if Mr. Marquez-Huentez had pled guilty or if he had been convicted through a jury, I think we'd be in a different situation, Your Honor, because the court is not – if the court – what the court would be saying at that But that's not – but that's not what's happening, and the district court here is acting on a – on a misunderstanding of what happened previously. Now, the court, if it really believed, which it appears that it did, that he had been convicted by a jury of his peers, has – wouldn't – and now comes and says, you know, I didn't do this at all, then I – I understand why the court might be angry with him and want to sentence him more, but that's not what's – that's not what actually happened. But I thought he did admit at one hearing that he did, in fact, engage in the conduct. Your Honor, so during – the government raises the colloquy at the change of plea. I – Mr. Marquez-Huentez hasn't even – didn't even graduate from high school. He's working through a translator. The indictment and the element to commit – to be convicted of illegal reentry with an enhanced penalty doesn't require that you committed the underlying prior. It only requires that you were convicted of. So the indictment charges him with having been convicted previously with a domestic violence conviction. At the change of plea, when the court is advising him of the necessary elements for the sentencing enhancement, the court advises him that it has to be – that you have to – must have been convicted. Not that you had to have committed, but you must have been convicted. This is the framework in which he's now answering the court's question. Now, to – I think – I think basically it would be a reasonable answer for someone of his education working through a translator to understand the question the same way that it has been presented to him in the indictment and in the advisement about what is necessary to having been – to have a – to be convicted of illegal reentry with an enhanced penalty, and that is that you were convicted. Now, it's very clear under California law that if you plead NOLO to a – to an offense, then for – the legal effects of the NOLO plea are the same as a guilty plea. So he understands he has a conviction. He never disputes that he has a conviction. And my argument to the court is that when he says yes to that question, he's not – he's not understanding the nuanced distinction that we're discussing right now, the difference between committing and being convicted of, and he's understanding it as was I convicted of this, and yes, he was. And I – You've got less than a minute. I would like to reserve that for rebuttal. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, Yassin Mohamed representing the United States. Your Honor, there was no procedural error here, not under the plain error review, and the defendant's low-end guideline sentence where the Court started with a correctly calculated guidelines range, took into account the 3553A factors, considered the defendant's mitigation arguments, provided reasons why it didn't believe the defendant's mitigation arguments.  So let me start with the procedural error that the defendant raises. As far as those foreign police reports are concerned, it's not – it's not fair to say that the district court disbelieved that the defendant was kidnapped. What the district court said, that it found those particular police reports unpersuasive – Did he say that he believed the defendant was kidnapped? Actually, what the district court said was that the district court accepted as true the reason for which the reports were offered, Your Honor, actually, because district court said that, I'll accept as true that Honduras is a dangerous place. I will accept as true that his family members, defendant's family members, were killed. The defendant did, in fact, intend to seek political asylum when he came to this country. That's not the same as saying he believed he was kidnapped. No, the court never specifically said that the court believed the defendant was kidnapped. But the court did question those police reports. And under the plain error review – But it looks like the district court made an assumption that's not entirely supported by the record, right? I mean, because the district court – and I'm trying to figure out if the district court erred in assuming that Mr. Marquez was back in the United States when his cousin gave the statement to the police. Okay. So what the record has in it, Your Honor, is that the police report says that it was made on October 15th and Marquez, the defendant, said that he was going to leave the country on October 10th. That's when he told his cousin. That's what's in the police report. Now, the court – for the court to conclude based on that police report when the cousin's making the police report five days later that the defendant is out of the country, that's – at best, that's up for reasonable dispute. We don't know. The record indicates that he may have been in the country or he may have been out of the country. But under the second prong of the plain error review, the defendant doesn't carry his burden because it's up for reasonable dispute. And in coming to the third prong, he fails even more miserably because the district court accepted as true the reason for which the report was offered, that he came to this country intending to seek political asylum from a very dangerous country. The court accepted that as true. So on remand, whether he was in the country or not at the time the report was made, it's not going to carry the day. And so he's going to – he fails also on the third prong of whether his substantial rights were affected. And that would be my point, unless the court has more questions about the police reports. That would be my point on the police reports. We can move on to the conviction. So the domestic violence conviction, there's no dispute that there is a conviction there. And it was – whether it's a no contest or a jury verdict or a guilty plea, as the court asks a question of defense counsel, it doesn't matter. So what else did the court have, the district court have before it? In the Rule 11 colloquy, the defendant admitted to committing the spousal battery crime. Not that he had the conviction, but actually that he committed the spousal battery crime. And that's important because under Blackledge, the court's rule is that a defendant's – a defendant's admission in a Rule 11 colloquy is entitled to a strong presumption of verity. In the district court, the finding that we're really here talking about is that the defendant is downplaying his criminal history. So one of the things that the court relies on in terms of the defendant downplaying his criminal history is that he's denying this crime that he pled no contest to, then that he told the district court that he actually committed, and now at sentencing, when he wants to minimize, he's saying that he didn't commit the crime. That's one. But the other part that the district court discussed of his criminal history and the defendant downplaying his criminal history is his DUI convictions. In the PSR, in paragraph 60, Your Honor, defendant says that he's never had any problem with excessive alcohol use. And that was important because the defendant has three DUI convictions, another two DUI arrests, where for most of them the blood alcohol content was greater than .08. He has a drunken disorderly conduct arrest. In the DV conviction, I mean, the defendant – in the narrative of that conviction, the victim reported that the defendant wasn't able to complete his rape because he passed out of alcohol consumption. That's the record in terms of alcohol use that the record that the court has before it. And defendant in the PSR denies that he has an alcohol problem? I mean, on this record, and then also the court has before it. But the spousal battery conviction accounts for the majority of the sentence. I mean, it's for the base offense level to be increased. Agreed? Absolutely. All right. So I guess I'm just wondering, isn't it possible that the judge could have sentenced him to a lower amount if – or imposed a lower sentence if he had not been mistaken about the fact that he'd gone to jury trial? No, I don't believe so, Your Honor, because actually in coming to the substantive reasonable part of this issue, the court actually noted – I mean, the court didn't just rely on the spousal battery conviction. That was important. But we have to note that there were other – there was another battery conviction where the defendant was ordered to undergo sex offender counseling. There were two additional battery arrests, and all of the victims here were I think that when the court was analyzing this conviction, that was one of the things that the court analyzed, but also the DUI history. The fact that the defendant came to the country and would engage in this DUI practice, one of those DUIs, Your Honor, he crashed into a wall. And the court also found important that the defendant didn't just come to the country and seek political asylum. Both times he reentered illegally. He engaged in drunk driving, and he was caught by the police. And in this particular instance, he started his political asylum proceedings after he was found by immigration authorities. Let's talk about the substantive reasonableness argument. I guess doesn't the fast track agreement, I guess the amount of times the parties agreed to was like 57 months, I believe? Actually, there was never an agreement. The government offered a fast track agreement. Well, you're right. 57 months was what the government offered. But doesn't that suggest that that would have been sufficient in this case? No, Your Honor, because there's a bargaining process with the plea agreement. So the fast track, the whole point of the fast track is, you know, well, we're going to offer this, we're going to be bound by it. The defendant would agree to not argue below the guidelines. The defendant would agree not to appeal the sentence. And that is a bargaining process. The defendant rejected that. Actually, the court did analyze the issue, and it said that the defendant rejected the fast track offer. And he kept the benefits of that rejection. He kept the ability to argue for appeal. He kept the ability to argue for a lower sentence. So when he already received the benefit, I mean, nobody would accept a fast track, as the court noted, if defendants were allowed to do this. And so I don't think that on remand the court would go below the guidelines sentence on this basis. The court's already analyzed this issue. Thank you, counsel. Thank you. We'll give you a little more than a minute if you need it. Thank you, Your Honor. I want to just start with the kidnapping, because I do think it's clear from the record that she does not believe that the kidnapping occurred, and the district court does not believe his proffered reason of why he reentered the country. And if the court looks at the record, it's ER 12 is where really she starts discussing what she credits and what she doesn't credit. And the district court is very clear. She only credits that his cousins, that family members are deceased and that the family intends to apply. She does not credit the kidnapping, right? She doesn't say any statements about the kidnapping. She doesn't even credit that it's a bona fide belief of his that he might be killed in Honduras should he be returned again. The district court then, after discussing the so-called concerns with the police report in Exhibit A, the district court then says, I can think of no reason why the cousin would have made this report. And that's very clearly saying, I don't believe what's being said in this police report, because why would someone make it? Now, of course, one reason why someone would make it is because it happened, and because the cousin is wanting to make documentation of it and seek police assistance in locating the kidnappers. And I think that's very clear that that's what we're arguing the error is, and the court kind of strains to come up with potential reasons why she disbelieves the police report. But ultimately, what the district court is disbelieving is his kidnapping, is whether the kidnapping occurred. And I think earlier I went through what we believe the record shows about the kidnapping. Just briefly on the second issue of the conviction, the government focused on whether it affected his substantial rights and went through some portions that the government proffered before the district court. And now, our matters that were not proven and were not admitted by Mr. Marquez Fuentes, and so the district court could not have properly relied on them in reaching that sentence. Now, what is, I think, clear from the district court's discussion is that she doesn't believe Mr. Marquez Fuentes at all. She doesn't believe him about the kidnapping, and she thinks now he's lying about his conviction. And that would have, if someone was lying, would have properly been considered in arriving at a sentence. And once you take that away, then I think we've clearly met our burden under Joseph, that it affected his substantial rights. We do not need even to show a likelihood. That's what Joseph said. Thank you, Kathy. Thank you, Your Honors. The next case just argued is the
judges: Reinhardt, Murguia, Owens